Carlos RAMOS MEZA, a/k/a Carlos Meza, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 13–87–034–CR.

Court of Appeals of Texas, Corpus Christi.

Aug. 28, 1987.

Moises V. Vela, Harlingen, for appellant.

Benjamin Euresti, Jr., Dist. Atty., Brownsville, for appellee.

Before NYE, C.J., and UTTER and SEERDEN, JJ.

## OPINION

NYE, Chief Justice.

This is an appeal from a conviction for the offense of possession of heroin in an amount less than twenty-eight grams. Appellant elected to be tried by the court, which found him guilty and assessed punishment at ten years' imprisonment. Appellant asserted what was, in effect, a motion to suppress because of an illegal search and seizure which, was denied. His sole contention on appeal is that the trial court erred in admitting evidence secured as a result of an illegal stop.

On July 28, 1986, Deputy Sheriff Garcia and his partner, Deputy Zepeda, were on patrol during the daylight hours in Cameron County, Texas. The officers received a police radio transmission instructing them to check a residence on Pennsylvania Avenue off of Highway 732. This area had experienced a rash of burglaries in the last year. Deputy Garcia specifically recalled six different burglaries which occurred within a four-or-five-mile radius of that location approximately six or eight months previously. Most of the burglaries occurred in the daytime.

The deputies had been instructed to look for a black van. The sheriff's department had received a call, apparently from an anonymous caller, to report a "suspicious vehicle in the driveway of a residence." Deputy Garcia admitted that he did not hear the telephone call and that his actions were based on information the dispatcher relayed to him. He stated that "they [the sheriff's department] felt that there was a burglary in process [sic]." As it turned out, no burglary had occurred.

Garcia testified that they did not find the black van at any of the residences they were instructed to check. However, they encountered a black van traveling north on Highway 732 about three miles south of Pennsylvania Avenue. It was the only black van they saw in the area. The black van pulled over to the side of the road and was attempting to make a U-turn when the deputies parked their unit in front of the van and stopped it. There is no indication that the officers considered the U-turn a traffic violation, that the officers observed the van or its occupants engaged in any criminal conduct, or that the deputies had any information connecting the van or its occupants with any crimes, particularly burglaries.

After the initial stop, Deputy Garcia observed the driver, appellant, make a furtive gesture to his right as if trying to hide something on the van's console. Deputy Garcia then saw half of an aluminum can on the console which "looked like it had been burned from something from the bottom." Based on his experience, he knew this type of item was often used for "free-basing narcotics." Deputy Garcia asked appellant to get out of the van and he complied. Then, Deputy Garcia testified, "I told him why we stopped him, because there was a black van reported in the area." A pat-down search of appellant produced a knife, a syringe with a needle still on it, and an aluminum foil packet containing a brown-colored substance resembling heroin. Appellant was arrested.

On cross-examination, Deputy Garcia conceded that he stopped the van based upon the telephone call regarding a suspicious black van parked in a residential driveway. He also admitted that, at the time, he did not know whether a burglary had been committed or attempted. After the stop, he said that appellant did tell him that he had been at this driveway. Deputy Garcia stated that appellant told him that he and his "other friend" had been "talking on this driveway."

We have no quarrel that the facts which developed after the initial stop were sufficient to justify the warrantless search and arrest. The question is whether the initial investigatory stop was justified.

■ A police officer may briefly stop a suspicious person in order to determine his identity or to momentarily maintain the status quo while obtaining more information. An occupant of an automobile is just as subject to such a brief detention as a pedestrian. *Gearing v. State,* 685 S.W.2d 326, 327–28 (Tex.Crim.App.1985); *see also Pope v. State,* 695 S.W.2d 341, 343–44 (Tex.

App.—Houston [1st Dist.] 1985, pet ref'd). Circumstances amounting to less than probable cause for an arrest may justify temporary detention for the purpose of investigation since an investigation is considered to be a lesser intrusion upon the personal security of an individual. *Gearing*, 685 S.W.2d at 328. In determining the reasonableness of the police conduct, we look to the totality of the circumstances surrounding the intrusion.

 To justify an investigatory stop, a police officer must have specific articulable facts which, in light of the officer's experience and personal knowledge, together with other inferences from those facts, would warrant the intrusion upon the person stopped for further investigation. *Schwartz v. State*, 635 S.W.2d 545, 547 (Tex.Crim.App.1982); *Munoz v. State*, 709 S.W.2d 34, 37 (Tex.App.—Corpus Christi 1986, no pet.). A detention based on a mere hunch or suspicion is illegal. *Johnson v. State*, 658 S.W.2d 623, 626 (Tex. Crim.App.1983). The police officer must have a reasonable suspicion that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to crime. *Schwartz*, 635 S.W.2d at 547.

 If the activity is as consistent with innocent activity as it is with criminal activity, a detention based on that activity is unlawful. *Dickey v. State*, 716 S.W.2d 499, 503–504 n. 4 (Tex.Crim.App.1986); *Johnson*, 658 S.W.2d at 626; *Schwartz*, 635 S.W.2d at 547; *Pickens v. State*, 712 S.W.2d 560, 562 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd); *Munoz*, 709 S.W.2d at 37. The circumstances justifying an investigatory detention must be such as to distinguish the detained person's activity from that of any other citizen and must be based on an objective perception of events rather than the subjective feelings of the officer. *Dickey*, 716 S.W.2d at 504 n. 4.

 There is nothing illegal or suspicious about a person driving a black van. There is nothing illegal or suspicious about driving a black van in a residential area or parking in a residential driveway, even if the area has been subject to a "rash of burglaries." This activity is just as consistent with innocent activity as it is with criminal activity. The officers in the instant case had no information indicating that a crime had been committed. They had no knowledge at all about the occupants of the van. They did not see the van driving or parking in the particular residential area. They did not stop appellant's van because of any traffic violation.

Deputy Garcia testified that they stopped the van based solely on the anonymous telephone call. A police radio call or an anonymous telephone call will not justify a warrantless arrest or search, but it may provide a sufficient basis for an investigatory stop. *Earls v. State*, 668 S.W.2d 453, 454 (Tex.App.—Texarkana 1984, no pet.); *see also Ferguson v. State*, 573 S.W.2d 516, 522 (Tex.Crim.App.1978). However, the anonymous call must give the police officer some objective, articulable information which would warrant an investigatory stop. The record does not reflect why the caller felt the van was "suspicious." The record also does not reflect how long after the call was received that the officers stopped appellant. Appellant was stopped three or four miles from the area in question. *See generally, Glass v. State*, 681 S.W.2d 599 (Tex.Crim.App.1984); *Munoz*, 709 S.W.2d 34.

The record in the instant case does not reflect specific, articulable facts which would distinguish appellant's activity from innocent activity, and, thus, justify the initial stop of appellant's vehicle. We hold that the initial stop was unlawful and that the trial court erred in admitting any evidence obtained as a result of the stop.

The judgment of the trial court is REVERSED and the cause is REMANDED for new trial.