**Gary B. SEWELL, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 13–90–051–CR.

Court of Appeals of Texas,
Corpus Christi.

Oct. 4, 1990.

Joseph E. Garica, Portland, for appellant.

Thomas L. Bridges, Sinton, for appellee.

Before NYE, C.J., and DORSEY and KEYS, JJ.

## OPINION

NYE, Chief Justice.

Appellant, Gary Sewell, pleaded no contest subsequent to a plea bargain to burglary of a habitation. The trial court assessed punishment as fifteen years' confinement in the Texas Department of Criminal Justice, Institutional Division and a $2,000 fine. By two points of error, appellant asserts that the trial court erred in overruling his pretrial motions to suppress evidence and statements which were allegedly obtained pursuant to two unlawful arrests. We affirm the trial court's judgment.

The record reveals that at approximately 2:00 a.m. on September 20, 1989, Aransas Pass police officers Martinez, Titus, Winkle and Grumbles answered a radio dispatch reporting a "suspicious person" in the Thirteenth Street Apartments area. Officer Titus arrived first and observed appellant in the parking lot of the apartment complex. Titus noticed that two television sets had been placed on the hood of appellant's pickup truck, a microwave oven was in the truck cabin and a battery charger lay in the truck bed. Appellant informed Titus that he was transferring these items into the apartment where he was staying with his father.

At that time, Officer Winkle arrived, followed shortly thereafter by officers Martinez and Grumbles. The officers knew appellant from previous contact and talked to him regarding his ownership of the items they observed but did not arrest him. Officer Martinez was aware that appellant had prior convictions for burglary and suggested that the officers record the serial numbers from the items appellant was moving. Appellant's identification or driver's license number did not match a license number inscribed on the microwave oven. Officer Grumbles instructed appellant to stand by the rear bumper of his truck while one of the officers recorded the identification numbers. The serial numbers of the two televisions and the serial number and Texas driver's license number inscribed on the microwave oven were reported to the dispatcher.

Officer Winkle stated that the officers were suspicious of appellant because it was unusual for a person to be moving two television sets and a microwave oven at two o'clock in the morning. Furthermore, when the officers asked appellant why he chose to move his property at that time of night, he replied that he had recently purchased the appliances. When asked, appellant did not recall the name of the person who sold the items to him.

Appellant remained with the officers for approximately one and a half hours until the police computer indicated that none of the serial numbers were from items reported stolen. Appellant resumed his activities as the officers resumed their respective patrols.

The day after appellant was detained in the Thirteenth Street Apartments parking lot, the police department received a stolen property report indicating that John Thompson lost a television, microwave oven and a battery charger during a burglary of his residence. The serial numbers and driver's license number which Thompson reported from the microwave oven and television set were the same as those observed on the items in appellant's truck. Thompson also described a battery charger similar to the one with which appellant was seen.

Officer Martinez sought appellant at his father's apartment. The father consented to a search of the premises. Martinez found appellant asleep in the apartment and discovered a battery charger similar to the one reportedly stolen in the Thompson burglary.

One of the assisting officers gave appellant his *Miranda* warnings on suspicion of possession of stolen goods and transported him to the police station where an officer again informed appellant of his rights. The officers then attempted to verify with Thompson that the battery charger found

in appellant's possession was the one he reported stolen.

Three hours after appellant arrived at the station, Thompson informed the police officers that he mistakenly reported his battery charger as stolen. Martinez then released appellant from custody.

Following the release, Martinez asked appellant to reveal the location of Thompson's stolen television and microwave. Appellant indicated that he would not do so for fear that the police would arrest his friends who merely received the items from appellant. Martinez assured appellant that no criminal charges would be made against the friends. Appellant subsequently provided the name and address of the person to whom he had given one of the televisions and information leading to the recovery of the other television and the microwave oven at a Corpus Christi pawn shop.

Appellant asserts in his first point of error that the police had no probable cause to arrest him and therefore evidence of the serial numbers and driver's license numbers inscribed on items was illegally obtained. Appellant testified that he did not feel that he could leave at any time during that contact, even to enter the apartment where he was staying. He specifically points out that the length of his contact with the four officers indicates a detention amounting to a warrantless arrest. Thus, appellant concludes that the trial court erred by failing to suppress the evidence gathered during this alleged arrest.

■ A police officer may briefly stop a suspicious person in order to determine his identity or to momentarily maintain the status quo while obtaining more information. Circumstances amounting to less than probable cause for an arrest may justify temporary detention for the purpose of investigation since an investigation is considered to be a lesser intrusion upon the personal security of an individual. *Gearing v. State*, 685 S.W.2d 326, 328 (Tex. Crim.App.1985); *Ramos Meza v. State*, 736

S.W.2d 221, 223 (Tex.App.—Corpus Christi 1987, no pet.). To determine whether the police conduct was reasonable, we look to the totality of the circumstances surrounding the intrusion. *Ramos Meza*, 736 S.W.2d at 223.

■ To justify an investigatory stop, a police officer must be able to point to specific and articulable facts which, in light of the officer's experience and personal knowledge, taken together with rational inferences from those facts, reasonably warrant that intrusion. *Terry v. Ohio*, 392 U.S. 1, 20–22, 88 S.Ct. 1868, 1879–1880, 20 L.Ed.2d 889 (1968); *Schwartz v. State*, 635 S.W.2d 545, 547 (Tex.Crim.App.1982); *Munoz v. State*, 709 S.W.2d 34, 37 (Tex.App.— Corpus Christi 1986, no pet.). The police officer must reasonably suspect that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to crime. *Schwartz*, 635 S.W.2d at 547; *Ramos Meza*, 736 S.W.2d at 223.

■ In the present case, the evidence indicates that appellant's detention was nothing more than an investigatory stop to gather information. The four officers answered a suspicious person complaint at an apartment complex where they subsequently encountered appellant moving appliances in the early morning hours. The appliances and their identification numbers were readily visible. Several of the officers recognized appellant from past contact and at least one of the officers knew that he had prior burglary convictions. Appellant's identification or driver's license number did not match that inscribed upon the appliances. Although he claimed that he recently purchased these items, appellant could not remember the name of the vendor. Under these circumstances, it was reasonable for the officers to believe that appellant was possibly involved in criminal activity.[1] Point one is overruled.

---

1. The present case fails to fall within the purview of *Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987) and *White v. State*, 729 S.W.2d 737 (Tex.Crim.App.1987) as these

cases delineate the circumstances in which a warrantless seizure of an item "in plain view" during a lawful search of a private area, namely a dwelling place, may be reasonable.

In his second point of error, appellant asserts that the trial court erred by not suppressing certain statements and evidence obtained as a result of those statements pursuant to an unlawful arrest. At the time he took appellant into custody, Officer Martinez possessed knowledge of sufficient facts to make a warrantless arrest for possession of stolen property. *See* Tex.Code Crim.Proc.Ann. art. 14.01 (Vernon 1977). Following information that Thompson's battery charger had not been stolen, appellant was released from custody. He was free to leave when he gave Martinez the incriminating statements. There was no evidence of coercion or threats by the police to prompt or force appellant's statement.

A non-custodial, voluntary, oral statement is admissible at trial. Tex.Code Crim.Proc.Ann. art. 38.22, § 5 (Vernon 1979). If an appellant is not in police custody at the time he makes an oral confession and that confession is given freely, voluntarily and without compulsion, the evidence is admissible. *Shiflet v. State*, 732 S.W.2d 622, 623 (Tex.Crim.App.1985); *Huerta v. State*, 709 S.W.2d 21, 22–23 (Tex. App.—Corpus Christi 1986, no pet.).

We hold that the appellant gave his statement freely and of his own will and was not coerced, threatened or forced to do so. Because appellant was not in custody at the time he gave this statement, both the statement and the evidence recovered as a result of the statement was admissible evidence. Furthermore, because appellant made the statement under lawful circumstances, his subsequent arrest was not tainted. Point two is overruled.

The judgment of the trial court is AFFIRMED.