**Omar Rickey GREEN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–92–00674–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 10, 1993.

Ronald A. Piperi, Houston, for appellant.

John B. Holmes, Jr., Julie Klibert, Houston, for appellee.

## OPINION

DUGGAN, Justice.

Following a bench trial, the court found appellant, Omar Rickey Green, guilty of unlawfully carrying a weapon and assessed his punishment at 10 days in jail and a $250 fine. We affirm.

While on patrol on November 26, 1991, at approximately 10:30 p.m., Harris County Deputy Sheriff T.J. Bohannon noticed appellant's vehicle because its license plate appeared to be improperly displayed. Bohannon testified that appellant had a temporary paper license plate that was not displayed in the appropriate place in the vehicle and was not totally visible from the rear. As a result, Deputy Bohannon initiated a traffic stop. Appellant proceeded approximately two blocks and then pulled into a private drive. Deputy Bohannon pulled in behind appellant.

Appellant exited the vehicle before Deputy Bohannon could reach the driver's door; the two passengers remained in the vehicle. Bohannon explained the reason for the stop, and asked appellant for a driver's license and if the vehicle belonged to him. Appellant explained that it was a rental car. Bohannon and appellant walked to appellant's vehicle, and appellant produced a rental agreement that coincided with his driver's license. The two then walked back to the deputy's car, where they were looking at the rental agreement when Deputies Ellis and Levy arrived on the scene.

Ellis and Levy were "just checking by" with Deputy Bohannon, according to standard procedure. There was apparently some concern for Deputy Bohannon's safety because there had been a disturbance in the area 20 minutes earlier involving a man armed with a shotgun.

Deputy Ellis approached appellant's vehicle and shined his flashlight in the window. He called this "a standard plain view search" for contraband. Upon shining his flashlight in appellant's vehicle, Deputy Ellis saw a green suede pouch that he described as a "pistol rug" on the vehicle's floorboard, sticking out about two inches from under the front seat. Deputy Ellis testified that the term "pistol rug" is the common name for a zippered pistol case. Although the pistol rug was partially unzipped, Deputy Ellis was not able to see any part of a pistol inside. Deputy Levy drew his handgun while Deputy Ellis retrieved the pistol rug from the car. Ellis opened it and found a .357 caliber revolver.

After pleading not guilty to the charge of unlawfully carrying a weapon, appellant filed a motion to suppress evidence of the handgun. After a hearing, the trial court overruled appellant's motion. In three points of error, appellant contends that the trial court abused it discretion in overruling his motion to suppress evidence.

In reviewing the ruling on a motion to suppress evidence, we view the evidence in the light most favorable to the ruling, because the trial judge is the sole fact finder and is entitled to believe or disbelieve any or all of the testimony presented. *Clark v. State*, 548 S.W.2d 888, 889 (Tex.Crim.App. 1977). Unless there is a clear showing of abuse of discretion, the trial court's ruling on the admissibility of the evidence will not be reversed. *Williams v. State*, 535 S.W.2d 637, 639–40 (Tex.Crim.App.1976); *Brooks v. State*, 830 S.W.2d 817, 820 (Tex.App.—Houston [1st Dist.] 1992, no pet.). The trial court is the sole trier of fact at a suppression hearing, and the appellate court is not at liberty to disturb any finding that is supported by the record. *Green v. State*, 615 S.W.2d 700, 707 (Tex.Crim.App.), *cert. denied*, 454 U.S. 952, 102 S.Ct. 490, 70 L.Ed.2d 258 (1981); *Burkett v. State*, 760 S.W.2d 345,

346 (Tex.App.—Houston [1st Dist.] 1988, no pet.).

In his first point of error, appellant contends the evidence should have been suppressed because the handgun was secured as a result of an illegal stop.

 Circumstances short of probable cause for an arrest may justify temporary detention for the purpose of investigation, because an investigation is considered to be a lesser intrusion upon an individual's personal security. *Gearing v. State*, 685 S.W.2d 326, 328 (Tex.Crim.App.1985). The investigating police officer must have a reasonable suspicion that there is something out of the ordinary occurring, and there must be some indication that the unusual activity is related to crime. *Viveros v. State*, 828 S.W.2d 2, 4 (Tex.Crim.App.1992). To determine whether the police conduct is reasonable, this Court must look to the totality of the circumstances surrounding the intrusion. *Sewell v. State*, 797 S.W.2d 376, 378 (Tex.App.—Corpus Christi 1990, no pet.). A police officer may stop a vehicle for a traffic violation. *Valencia v. State*, 820 S.W.2d 397, 399 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd).

Appellant apparently contends that the temporary license plate on his vehicle was not in violation of any law or statute, and the officer therefore did not have a reasonable suspicion that any criminal conduct was occurring. We disagree.

 Article 6686 of the revised civil statutes governs the use of temporary paper license plates. TEX.REV.CIV.STAT.ANN. art. 6686 (Vernon 1977). Appellant argues that article 6686 makes no reference to how a temporary cardboard tag should be displayed. However, article 6686(13) provides as follows:

> Display of Dealer's License Plates. The general distinguishing number and *all temporary cardboard tags issued pursuant to this Act shall be displayed in a manner conforming to the Department's regulations pertaining to the display of such plates* and tags on unregistered vehicles operating on the streets or highways of this State.

TEX.REV.CIV.STAT.ANN. art. 6686(13) (Vernon 1977) (emphasis added.)

The regulations referred to in article 6686 are promulgated by the State Department of Highways and Public Transportation, and are located in the Texas Administrative Code. The regulation pertaining to the display of temporary cardboard tags provides in part:

> Temporary cardboard tags may be displayed either in the rear window or on the rear license plate holder of unregistered vehicles. *When displayed in the rear window, the tag shall be attached in such a manner that it is clearly visible and legible when viewed from the rear of the vehicle. . . .*

43 TEX.ADMIN.CODE § 17.68(b) (West Supp. 1993–94) (emphasis added.)

At the hearing on the motion to suppress, Deputy Bohannon was asked why he pulled over appellant's vehicle.

Q. (Counsel) And what drew your attention to his vehicle?

A. (Deputy Bohannon) Observed an improperly displayed license plate. Paper tag was in the rear window and was not totally visible from the rear.

Q. (Counsel) He had a temporary dealers tag up on the window, but you couldn't see it?

A. (Deputy Bohannon) Right. It wasn't clearly visible.

Based on this testimony, we conclude that Deputy Bohannon had a reasonable suspicion that a violation of either article 6686 or section 17.68(b) was occurring. The officer also had reason to suspect that the car was not properly registered, because he could not see its license plate clearly.

Our conclusion is supported by the decisions reached in several other cases with similar facts. In *Dodson v. State*, 646 S.W.2d 177, 184 n. 2 (Tex.Crim.App. [Panel Op.] 1980), the police officer pulled the defendant over because his temporary cardboard license plate was faded and unreadable. The court therefore concluded that the officer's suspicion, that the tag was outdated and invalid, was reasonable.

In *Foster v. State*, 814 S.W.2d 874, 878 (Tex.App.—Beaumont 1991, pet. ref'd), the officer testified that he pulled the defendant over because his car did not appear to have a license plate. The officer then determined that the rear window of the car did contain a temporary license plate, but that he had been unable to see it because the windows of the car were tinted. The court concluded that even though the defendant did have a valid dealer's plate, the officers, at the time the defendant was pulled over, had reason to believe that he was violating the statute which requires that a license plate be displayed on the front and rear of the vehicle, unless the vehicle is being operated under a dealer's license. The court concluded that the officers had no way of knowing that the defendant was a dealer until after they had pulled him over, and then discovered the plate in his rear window.

Because Officer Bohannon had a reasonable suspicion that appellant's license plate was improperly displayed, in violation of article 6686 and section 17.68(b), he was justified in detaining appellant for further investigation. Therefore, the stop was valid. Appellant's first point of error is overruled.

In his second point of error, appellant complains that the handgun found in his car was secured as the result of an illegal search and seizure under the fourth amendment of the United States Constitution. More specifically, appellant claims that the seizure of the gun from his vehicle did not meet the requirements for a plain view seizure.

It is well settled that items in plain view may be seized by law enforcement officers if two conditions are met. These conditions are: 1) the initial intrusion must be proper, in other words, the police have a right to be where they are when the discovery was made; and 2) it must be immediately apparent to the police that they have evidence before them (i.e., probable cause to associate the property with criminal activity). *State v. Haley*, 811 S.W.2d 597, 599 (Tex.Crim.App. 1991). Previously, it was also required that the discovery be inadvertent. However, the

United States Supreme Court has stated that inadvertence is no longer a necessary condition of a legitimate plain view seizure. *Horton v. California*, 496 U.S. 128, 129, 110 S.Ct. 2301, 2304, 110 L.Ed.2d 112 (1990).

Because we have already decided that the initial stop of appellant was legal, the first condition for a plain view seizure has been met. Therefore, the remaining issue is whether the pistol rug was immediately apparent as evidence or contraband.

Appellant contends that the green, zippered, suede pouch in which the gun was discovered was not contraband in and of itself. Therefore, he argues, the seizure and subsequent search of the pouch, which revealed the revolver, was illegal. We disagree.

In *Arkansas v. Sanders*, 442 U.S. 753, 764 n. 13, 99 S.Ct. 2586, 2593 n. 13, 61 L.Ed.2d 235 (1979) the Supreme Court stated:

Not all containers and packages found by police during the course of a search will deserve the full protection of the Fourth Amendment. Thus, some containers (for example a kit of burglar tools or a gun case) by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance. . . .

The Court explained that this exception to the warrant requirement was a variation of the plain view exception. *Robbins v. California*, 453 U.S. 420, 426, 101 S.Ct. 2841, 2846, 69 L.Ed.2d 744 (1981) "[I]f the distinctive configuration of a container proclaims its contents, the contents cannot fairly be said to have been removed from a searching officer's view." *Id.*[1]

In this case, the deputies specifically and consistently described the green suede pouch as a "gun rug," a "pistol case," and a "zipper pistol case." Deputy Bohannon testified, "It looked like a gun pouch to me," and "I would still take it as a gun rug." Deputy Ellis testified, "It looks like a pistol rug to me." Both deputies testified that they owned gun rugs and were extremely familiar with them.

---

1. We note that both *Sanders* and *Robbins* have been overruled. However, the rationale set forth in the *Sanders* footnote remains valid. *See U.S.* v. *Villarreal*, 963 F.2d 770, 776 n. 2 (5th Cir. 1992); *U.S. v. Donnes*, 947 F.2d 1430, 1437 (10th Cir.1991).

Both testified that gun rugs were used to store and transport weapons.

In *U.S. v. Stevens*, 635 F.Supp. 1356, 1362 (W.D.Mich.1986), the police officer seized a shotgun found inside a long gun case. The court concluded that a warrant to search the case was unnecessary because the distinctive configuration of the gun case effectively rendered its contents subject to plain view.

We find the present case distinguishable from *U.S. v. Coleman*, 969 F.2d 126, 131 (5th Cir.1992). In *Coleman*, the police officer seized a brown leather pouch that contained a gun, the defendant's driver's license, several beepers, and an address book. The court concluded that the seizure was not valid as a plain view seizure because the leather pouch was not evidence of a crime, contraband, or otherwise inherently incriminating. However, in *Coleman*, there was no testimony to indicate that the brown pouch was in any way distinctive or that it resembled a gun case.

██ Deputy Bohannon had lawfully stopped appellant to determine whether his license plate was legally displayed. During that stop, Deputy Ellis shined his flashlight in appellant's car and noticed the gun rug in plain view. The fact that Deputy Ellis used a flashlight does not prevent the gun rug from being in plain view. *Griffin v. State*, 683 S.W.2d 16, 17–18 (Tex.App.—Waco 1984, no pet.). Because of the distinctive nature and configuration of the gun rug, its contents, the gun, were also considered to be in plain view. *Sanders*, 442 U.S. at 764 n. 13, 99 S.Ct. at 2593 n. 13. In the course of the lawful investigatory detention of appellant, the deputies discovered the gun while standing in a place where they had a lawful right to be. Furthermore, the gun was obviously related to the crime for which appellant was charged. Thus, the plain view doctrine authorized the seizure of the gun from appellant's vehicle without a warrant. *See Kelly v. State*, 721 S.W.2d 586, 587 (Tex.App.—Houston [1st Dist.] 1986, no pet.); *Crooks v. State*, 821 S.W.2d 666, 669 (Tex.App.—Houston [14th Dist.] 1991, no pet.).

Appellant's second point of error is overruled.

██ In his third point of error, appellant contends that the handgun found in his car was secured as the result of an illegal search under the Texas Constitution. Appellant argues that the Texas Constitution requires the addition element of "inadvertence" before the requirements for a plain view seizure are met.

Appellant concedes the United States Supreme Court dispensed with the "inadvertence" requirement in *Horton*, 496 U.S. at 129, 110 S.Ct. at 2304. Appellant nevertheless argues that article I, § 9 of the Texas Constitution provides greater protection than the fourth amendment of the United States Constitution.

Appellant bases this argument on the case of *Heitman v. State*, 815 S.W.2d 681 (Tex. Crim.App.1991), in which the Court of Criminal Appeals held that the courts of Texas have the right to interpret the Texas Constitution independently from the United States Constitution, and may provide more protection than required by cases interpreting the fourth amendment of the United States Constitution.

We agree that the Texas Constitution could, according to *Heitman*, require a showing of inadvertence. However, Texas case law has not established an inadvertence requirement. In fact, the Court of Criminal Appeals has recognized that inadvertence is no longer a requirement for a plain view seizure. *Haley*, 811 S.W.2d at 599. Therefore, we conclude that inadvertence is no longer a requirement for a plain view seizure under either the fourth amendment of the United States Constitution or article I, § 9 of the Texas Constitution.

Appellant's third point of error is overruled.

The judgment is affirmed.