NUMBER 13-05-00259-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 
 

$822.41 IN U.S. CURRENCY AND 

A 2003 DODGE RAM 1500 TRUCK, Appellants,


v.
 


THE STATE OF TEXAS, Appellee.

 


On appeal from the 130th District Court 

of Matagorda County, Texas.


 


DISSENTING MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Benavides and Vela


Dissenting Memorandum Opinion by Justice Vela




 Because I do not believe that the warrantless search of Martin's automobile violated
the Fourth Amendment, I respectfully dissent.

I. Background


 On February 25, 2004, Officer Armando Galvan, (1) a Bay City police officer, was
dispatched to an apartment complex at 3006 1st Street, No. 12 in response to a
disturbance call. The dispatcher named Martin as the suspect and gave a description of
Martin's vehicle as a silver Dodge pickup. Officer Galvan arrived at the complex just as
Martin was backing the pickup from its parking spot. Officer Galvan parked his patrol car
behind Martin, blocking Martin's path. Upon approaching the vehicle, Galvan perceived
that Martin spoke with slurred speech and saw that Martin's right hand was either near the
pickup's center console or coming from it. Officer Galvan could not see what was in the
console, but testified that it was a "pretty big armrest area" with a fold-down lid that lifted
from the front and opened toward the rear of the pickup. 

 Officer Galvan asked Martin to step out of his pickup. As he did so, Officer Galvan
saw that Martin's right hand was in the console. When Martin was out of the pickup,
Officer Galvan saw that the console was closed. He witnessed that Martin was unsteady
on his feet and incomprehensible due to his slurred speech. He further noticed that Martin
appeared extremely nervous, and he was shaking to the point that he had to hold onto the
pickup to maintain his balance.

 Officer Galvan concluded that Martin may have been under the influence of some
substance. Accordingly, he detained Martin in the back of his patrol car. Officer Galvan
testified that he placed Martin in the cruiser for Martin's safety and that he was concerned
that Martin might fall. Officer Galvan further stated that there was no longer a threat once
Martin was out of his pickup. He determined that, because of Martin's demeanor, it was
necessary to discover what was in the pickup's console.

 Officer Oliver Green (2) arrived at the scene when Martin was already inside Officer
Galvan's patrol car. Officer Green testified that Officer Galvan told him that it appeared
that Martin "was hiding something in the center console." Officer Green also testified that
as a former detention officer for the Matagorda County Sheriff's Department, he had
previously observed Martin while Martin was in custody at the jail. On the date in question,
Officer Green witnessed that Martin was extremely jittery, unable to walk, speaking very
fast, and significantly slurring his speech. Based on Martin's change in condition between
the time Officer Green observed him in jail and on the date in question, Officer Green
concluded that Martin was intoxicated. He believed that Martin's condition was induced
by narcotics. Without either a warrant or consent, Officer Green opened the pickup's
console and found a plastic bag containing a substance that he field tested to be cocaine. 
At that point, he arrested Martin. After Martin's arrest, police seized Martin's pickup, along
with $822.41.

II. The Investigatory Detention


 An officer conducts a lawful, temporary detention when he or she has reasonable
suspicion to believe that an individual is violating the law. Ford v. State, 158 S.W.3d 488,
492 (Tex. Crim. App. 2005); Balentine v. State, 71 S.W.3d 763, 768 (Tex. Crim. App.
2002). Reasonable suspicion exists if the officer has specific, articulable facts that, when
combined with rational inferences from those facts, would lead him or her to reasonably
conclude that a particular person actually is, has been, or soon will be engaged in criminal
activity. Garcia v. State, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). This is an objective
standard that disregards any subjective intent of the officer making the stop and looks
solely to whether an objective basis for the stop exists. Id. A reasonable-suspicion
determination is made by considering the totality of the circumstances. Id.; Ramos Meza
v. State, 736 S.W.2d 221, 223 (Tex. App.-Corpus Christi 1987, no pet.) (overruled on other
gounds).

 When evaluating the totality of the circumstances, we use a bifurcated standard of
review. Ford, 158 S.W.3d at 493. We give almost total deference to the trial court's
determination of historical facts and review de novo the trial court's application of law to
facts not turning on credibility and demeanor. Guzman v. State, 955 S.W.2d 85, 88-89
(Tex. Crim. App. 1997). The factual basis for stopping a vehicle need not arise from the
officer's personal observation, but may be supplied by information gained from another
person. Adams v. Williams, 407 U.S. 143, 147 (1972); Brother v. State, 166 S.W.3d 255,
257 (Tex. Crim. App. 2005). 

 Here, Officer Galvan received the following information from the dispatcher: (1) a
report of an individual involved in a disturbance; (2) the individual's name; (3) a description
of the individual's vehicle; and (4) the address of the disturbance. These are specific,
articulable facts from which Officer Galvan could reasonably conclude that Martin "has
engaged or is (or soon will be) engaging in criminal activity." Garcia, 43 S.W.3d at 530;
see also State v. Fudge, 42 S.W.3d 226, 231-232 (Tex. App.-Austin 2001, no pet.)
(upholding detention based solely on cab driver's unsolicited, in-person report to officer
about erratic driving); Glover v. State, 870 S.W.2d 198, 199-200 (Tex. App.-Fort Worth
1994, pet. ref'd) (upholding stop based on general description of possibly intoxicated driver
from anonymous EMS technician).

 Officer Galvan's testimony corroborated the information that the informant provided
to the police dispatcher. Thus, the trial judge was able to assess the informant's credibility. 
Even though the facts show that Martin was not engaged in any disturbance when Officer
Galvan stopped Martin's pickup, the inquiry is not whether Martin actually engaged in a
disturbance, but whether Officer Galvan had specific, articulable facts to reasonably
conclude that Martin actually is, has been, or soon will be engaged in criminal activity. 
Therefore, I conclude that the trial court did not abuse its discretion by impliedly
determining that the circumstances, taken together, gave Officer Galvan reasonable
suspicion to stop Martin's pickup and conduct an investigative detention. See Mann v.
State, 525 S.W.2d 174, 176 (Tex. Crim. App. 1975) (concluding that officers, upon
receiving an anonymous call, were justified in initiating an investigation by proceeding to
hunt for a car and occupants fitting the description given over the phone); Mabry v. State,
492 S.W.2d 951, 953 (Tex. Crim. App. 1973) (concluding that police had probable cause
to stop and arrest a suspect matching a broadcast about two black suspects in a green
1965 Chevrolet with Florida plates); Vannatta v. State, 773 S.W.2d 771, 773 (Tex.
App.-Corpus Christi 1989, pet. ref'd) (concluding that an officer who received a radio
dispatch about an unnamed person driving a blue and silver Bronco, displaying the license
plate ZY709, had reasonable suspicion to stop defendant who was driving a silver and blue
Chevy Silverdo pickup); Clifton v. State, 755 S.W.2d 556, 558 (Tex. App.-Fort Worth 1988,
no writ) (stating that police officer had probable cause to stop and arrest defendant based
on information by police dispatcher that vehicle believed to be stolen might be found at
specific address from which police officer had observed defendant driving away).

III. The Warrantless Search 


 I also believe that Officer Green acquired probable cause to search the pickup's
center console. A warrantless search of an automobile is reasonable under the Fourth
Amendment if law-enforcement officials have probable cause to believe that the vehicle
contains contraband. Wiede v. State, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007) (citing
Maryland v. Dyson, 527 U.S. 465, 466 (1999)). The justifications for this automobile
exception are that vehicles are inherently mobile, and the expectation of privacy with
respect to an automobile is relatively low. Wiede, 214 S.W.3d at 24. Furthermore, the
justification to conduct a warrantless search does not vanish once the vehicle is
immobilized. See Michigan v. Thomas, 458 U.S. 259, 261 (1982); State v. Guzman, 959
S.W.2d 631, 634 n.3 (Tex. Crim. App. 1998). Accordingly, a law-enforcement officer may
search a vehicle on the basis of probable cause to believe that it contains contraband,
although exigent circumstances do not exist to justify a warrantless search. Thomas, 458
U.S. at 261-262; Dixon v. State, 206 S.W.3d 613, 619 n.25 (Tex. Crim. App. 2006) ("A
finding of probable cause 'alone satisfies the automobile exception to the Fourth
Amendment warrant requirement.'") (citation omitted).

 The "totality of the circumstances" approach applies to appellate review of probable
cause for warrantless searches. Illinois v. Gates, 462 U.S. 213, 238 (1983); Torres v.
State, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005). In Wiede, the court of criminal
appeals explained probable cause as follows:

 Probable cause requires an evaluation of probabilities, and
probabilities "are the factual and practical considerations of everyday life on
which reasonable and prudent men, not legal technicians, act." The United
States Supreme Court has described probable cause as a "fluid concept[ ]";
its "substantive content" is derived from "the particular context[ ] in which" it
is assessed. Probable cause "exist[s] where the known facts and
circumstances are sufficient to warrant a man of reasonable prudence in the
belief that contraband or evidence of a crime will be found[.]" Known facts
and circumstances include those personally known to law enforcement
officers or those derived from a "reasonably trustworthy" source.


Wiede, 214 S.W.3d at 24 (footnote numbers omitted). Furthermore, the Texas Court of
Criminal Appeals has stated: 

 "[W]hen there has been some cooperation between law enforcement
agencies or between members of the same agency, the sum of the
information known to the cooperating agencies or officers at the time of an
arrest or search by any of the officers involved is to be considered in
determining whether there was sufficient probable cause therefor." 


Woodward v. State, 668 S.W.2d 337, 344 (Tex. Crim. App. 1982). Probable cause
requires only a probability or substantial chance of criminal activity, not an actual showing
of criminal activity. Eisenhauer v. State, 678 S.W.2d 947, 954 (Tex. Crim. App. 1984),
(quoting Gates, 462 U.S. at 243 n.13).

 Here, the sum of the information known to Officers Galvan and Green showed that
at the time of the search: (1) Martin was unsteady on his feet and incomprehensible due
to slurred speech; (2) he was extremely jittery, unable to walk, and speaking very fast; (3)
Martin appeared extremely nervous, and he was shaking to the point that he had to hold
onto the pickup to keep his balance; (4) the pickup Martin was driving had a center console
which, according to Officer Galvan, was a "pretty big armrest area" with a fold-down lid that
lifted from the front and opened toward the rear of the pickup; (5) as Martin got out of the
pickup, Officer Galvan saw that Martin's right hand was in the console: (6) when Martin was
out of the pickup, Officer Galvan saw that the console was closed; (7) Officer Galvan could
not see what was in the console; and (8) based on Martin's change in condition between
the time Officer Green saw him in jail and on the date in question, Officer Green concluded
that Martin was intoxicated.

 Martin's behavior during the investigatory detention would lead a reasonable,
prudent police officer to conclude that his demeanor appeared consistent with recent
consumption of drugs. Furthermore, when Martin was getting out of the pickup, Officer
Galvan saw his right hand in the center console. These facts would lead a reasonable,
prudent police officer to believe that Martin may have tried to hide an illegal substance in
the console. Thus, even though Martin was not arrested for the disturbance, the
investigation refocused on whether he had violated another law. I find that these facts and
circumstances are sufficient to warrant a person of reasonable prudence in the belief that
contraband or evidence of a crime would be found in the pickup's center console. Based
upon the totality of the circumstances, I believe Officer Green had probable cause to
believe that the console contained contraband. Therefore, the warrantless search thereof
was reasonable under the Fourth Amendment. See Wiede, 214 S.W.3d at 24. Based on
the totality of the circumstances in this case, I would hold that the trial court did not abuse
its discretion in overruling Martin's motion to suppress. I would overrule issue one.

 

 ROSE VELA

 Justice

Dissenting Memorandum Opinion delivered and 

filed this 9th day of August, 2007
1. Officer Galvan is assigned to the patrol division, and he has been a police officer for nine years. 
In that time he has come into contact with several people who have been intoxicated by alcohol or other
substances.
2. Officer Green, also a patrol officer, has been an officer for approximately seven years, and he
formerly worked for the sheriff's office. Officer Green has similarly dealt with many intoxicated people.