The STATE of Texas, Appellee,

v.

Richard Kenneth HALEY, Appellant.

No. 693–90.

Court of Criminal Appeals of Texas,
En Banc.

June 12, 1991.

Henry C. Paine, Jr., Denton, for appellant.

Bill Turner, Dist. Atty., Rod Boyles, Margaret Lalk, Asst. Dist. Attys.; Bryan, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

OVERSTREET, Judge.

Appellant was convicted in a trial by jury of delivery of dangerous drugs, specifically thyroid, in violation of TEX.REV.CIV. STAT.ANN. art. 4476–14 § 15(b) (Vernon 1976), repealed and now codified as TEX. HEALTH & SAFETY CODE ANN. § 483.-042 (Vernon Pamph.1991), and was sentenced by the trial court to ten years confinement in the Texas Department of Corrections.[1] Appellant presented four points of error to the court of appeals. That court, in disposing of two of those points, concluded that the law enforcement officers in this case were without authority to seize challenged evidence, and that the erroneous admission of that evidence was not harmless, thus the cause was reversed and remanded to the trial court. We granted the State's petition for discretionary review on four grounds for review, all of which

---

1. Now known as the Texas Department of Criminal Justice, Institutional Division.

question the court of appeals' ruling regarding the legality of the above-mentioned seizure.[2]

The record reveals that in February of 1987, a Texas Department of Public Safety (DPS) officer received information regarding possible illegal repackaging and distribution of drugs at a building owned by appellant in Kurten, Brazos County, Texas. This officer conveyed that information to a Texas Department of Health investigator. On February 5, 1987, they both went before a local magistrate and the health department investigator secured an inspection warrant, pursuant to Article 18.05, V.A.C.C.P., authorizing him to inspect the premises of that suspect building. The DPS officer accompanied the health investigator to the building and they were allowed entry by employees of appellant. The employees were observed repackaging pills. It was determined that these pills were various drugs, including thyroid, that were included within the legal definition of dangerous drugs per Article 4476–14 § 2 TEX. REV.CIV.STAT.ANN. (Vernon 1976), repealed and now codified as TEX.HEALTH & SAFETY CODE ANN. § 483.001 (Vernon Pamph.1991). Approximately nine million dosage units (i.e., individual pills) were present. Many of these pills exhibited that their expiration dates had long since passed (many at various dates in the 1970's) and were thus out-of-date. The inspection also revealed plastic baggies, weight loss advertising literature, order and reorder forms, envelopes, mailing labels, and a postage meter. Based upon these observations, the DPS officer concluded that a violation of the law was taking place, specifically repackaging expired misbranded adulterated drugs for introduction into commerce.[3] At that time the DPS officer proceeded to seize all of the drugs, packaging and advertising materials, and mailing paraphernalia present. These six-vehicle-loads of materials were stored at the local DPS lockup facility. The health investigator then proceeded to secure a mail watch through the United States Postal Service which resulted in a listing of names and addresses for the building's outgoing mailings. One recipient of such mailings, a resident of Ohio located as a result of the mail watch, testified that she had received pills which were chemically identified as thyroid.

Appellant filed a motion to suppress all of the pills and materials seized at the building and any evidentiary fruits arising therefrom. He argued that the evidence was illegally seized without a search warrant because there was a sham entry on the part of the DPS officer who had no lawful authority to enter the premises, and that the health investigator was himself without authority to seize the evidence at the building. In effect, he claimed that the DPS officer's accompanying the health inspector was merely a ruse to put him in the position to make a warrantless general search. That motion was overruled. As noted previously, on appeal the court of appeals held that the evidence was unlawfully seized and that the denial of the motion to suppress and subsequent admission of that challenged evidence was harmful error requiring reversal.

■ In Grounds of Error Numbers One and Two, the State claims that the court of appeals erred in holding that the health investigator was without lawful authority to seize the challenged evidence. Upon careful review of the record, we find that the health investigator did not seize any of that evidence. In testifying at both the suppression hearing and trial on the merits before the jury, the health investigator adamantly and unequivocally insisted that he had not seized any of the items found at

2. However, the State in its brief before this Court abandoned Ground of Error Number Three which averred that the court of appeals had rendered a decision in conflict with that of a sister court of appeals in the same matter in holding that the appellant had been harmed by admission into evidence of a portion of the dangerous drugs seized.

3. Such was indeed prohibited by TEX.REV.CIV. STAT.ANN. art. 4476–5 § 3 (Vernon Supp.1987), repealed and now codified as TEX.HEALTH & SAFETY CODE ANN. § 431.021 (Vernon Pamph.1991).

the building.[4] He insisted that the DPS officer had actually seized the evidence. The DPS officer's testimony confirmed this. Thus, contrary to the court of appeals' assumption, this evidence was not seized pursuant to the inspection warrant. In support of its Grounds of Error Numbers One and Two, the State submits that TEX.REV.CIV.STAT.ANN. art. 4476–14 § 8 (Vernon 1976), repealed and now codified as TEX.HEALTH & SAFETY CODE ANN. § 483.074 (Vernon Pamph.1991), authorized the warrantless seizure of dangerous drugs by a health investigator lawfully inspecting premises pursuant to the Texas Food, Drug, and Cosmetic Act. Since the record conclusively reveals that no such seizure took place in the instant cause, we decline to address the State's contention and conclude that the portions of the court of appeals' opinion relating to such was improvidently discussed. We decline to express an advisory opinion regarding the validity of that court's discussions thereon.

Ground of Error Number Four seems to challenge the overall basis of the court of appeals' ruling that the seizure was improper.[5] That court held that the authority for seizure of dangerous drugs is limited by the statutory requirement of a search warrant and that the DPS officer, without such warrant, lacked authority to seize the evidence. *Haley v. State*, 788 S.W.2d 892 (Tex.App.—Houston [14th Dist.] 1990). Since we have earlier concluded that the challenged evidence was seized by the DPS officer rather than the health investigator, we must determine whether that officer lawfully seized it.

It has been very well settled that items in "plain view" may be seized by law enforcement personnel if each of the three conditions set forth in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) are met. These conditions include: 1) the initial intrusion must

be proper, in other words, that the police have a right to be where they are when the discovery is made; 2) the discovery of the evidence must be inadvertent; and 3) it must be "immediately apparent" to the police that they have evidence before them (i.e. probable cause to associate the property with criminal activity). *Stoker v. State*, 788 S.W.2d 1, 9 (Tex.Cr.App.1989); *White v. State*, 729 S.W.2d 737, 739 (Tex.Cr.App. 1987); *Williams v. State*, 668 S.W.2d 692, 699 (Tex.Cr.App.1983). However, the United States Supreme Court has recently modified the criteria in that "inadvertence" is no longer a necessary condition of a legitimate "plain view" seizure. *Horton v. California*, —— U.S. ——, ——, 110 S.Ct. 2301, 2304, 110 L.Ed.2d 112, 118 (1990).

With regard to condition # 3, the record reflects that based upon all that was within his view upon entry into the building, it was indeed "immediately apparent" to the DPS officer that he had evidence before him; specifically, contraband and instrumentalities used in illegally repackaging expired misbranded adulterated drugs for introduction into commerce. With regard to condition # 1, appellant has cast aspersions upon the legitimacy of the officer's initial intrusion.

As stated earlier, the initial intrusion must be proper, i.e., the police must have had the right to be where they were when the discovery was made. Since the DPS officer was the one who made the seizure, it is his intrusion into the building that must be discussed. The record reveals that that officer's initial entry into the building was lawful. He was merely accompanying the health investigator who was making an inspection authorized via provisions of the Texas Food, Drug, and Cosmetic Act. That investigator testified that he usually gets a local law enforcement officer to accompany him on an in-

---

**4.** In fact, he testified that his understanding of the legal authority that he was acting upon only authorized him to inspect, review, detain, and embargo items rather than seize them.

**5.** Ground of Error Number Four states that "[t]he Fourteenth Court of Appeals has rendered

a decision in conflict with the decision of the First Court of Appeals on the legality of the identical seizure." Such refers to an unpublished opinion on the appeal of misdemeanor convictions arising out of the very same seizure of evidence.

spection.[6] There was no forced entry into the building. In fact, both officers and one of the employees testified that entry was with the employees' consent. Appellant does not even dispute that the health investigator was authorized to be there pursuant to the above-mentioned inspection warrant and/or the provisions of TEX.REV. CIV.STAT.ANN. art. 4476–5 § 25 (Vernon Supp.1987), repealed and now codified as TEX.HEALTH & SAFETY CODE ANN. § 431.042 (Vernon Pamph.1991).

The record reflects that the DPS officer was accompanying the health inspector, who was indisputably authorized to enter the building. He assisted the health inspector in locating the building in the unfamiliar town of Kurten, Texas. Additionally, the record unequivocally reflects that the employees consented to the DPS officer's (along with the health inspector's) entry. There can be no doubt that the initial intrusion by the DPS officer was proper.

We therefore hold that the complained of evidence was properly seized pursuant to the "plain view" doctrine.[7] We therefore reverse the judgment of the court of appeals and remand to that court for consideration of appellant's other two grounds of error which were not addressed in its opinion.

CLINTON, Judge, dissenting.

These causes present an anomaly, the likes of which rarely confront this Court. Out of a single "administrative" entry and seizure of materials there arose several prosecutions, mostly misdemeanors, but at least one felony; on appeals from those convictions, misdemeanors went to the First Court of Appeals, the felony to the Fourteenth Court of Appeals. The First Court upheld the seizure on one legal theory (plain view); the Fourteenth ruled out its fruits on another (unauthorized seizure). Indeed, each petitioning party claims as a

reason for review that the decision should be examined because it is in conflict with that of the other. Today this Court says the First is correct and concomitantly the Fourteenth is wrong—both on the basis of a common legal theory. that the latter court did not address and the State does not invoke in the grounds for review we granted.

The decision of the Fourteenth Court of Appeals is properly based on the reasons explicated in its opinion, which correctly finds and applies the applicable law. Thus, I could affirm the judgment of the Fourteenth Court and reverse the judgment of the First Court.

Because the majority does not, I respectfully dissent.

---

**6.** It should be noted that this health investigator indicated that he was "not from Bryan" and was unfamiliar with the Kurten, Texas locale.

**7.** Though *Horton,* 110 S.Ct., at 2304, dispenses with the condition # 2 requirement of inadvertent discovery, we do note that the DPS officer's

discovery does meet the standards for inadvertence. There has been no showing that he knew in advance the location of the evidence and intended to seize it nor was there any systematic general exploration for expected or unexpected evidence.