Grant-DL v. State 















IN THE
TENTH COURT OF APPEALS
 

No. 10-94-199-CV

     DANIEL LEE GRANT,
                                                                                              Appellant
     v.

     ROBERT C. MORRIS, ET AL.,
                                                                                         Appellee


From the 52nd District Court
Coryell County, Texas
Trial Court # 26,088
                                                                                                    

MEMORANDUM OPINION
                                                                                                    

      Daniel Grant appealed from an instructed verdict in favor of Robert Morris, et al., rendered
at the close of his case in chief. Grant filed his notice of appeal and affidavit of inability to pay
costs on June 6, 1994, and the transcript was filed in this court on June 21. Although his brief
was due on July 19, no appellant's brief has been filed. See Tex. R. App. P. 74(k). Appellate
Rule 74(l)(1) provides:
Civil Cases. In civil cases, when the appellant has failed to file his brief in the time
prescribed, the appellate court may dismiss the appeal for want of prosecution, unless
reasonable explanation is shown for such failure and that appellee has not suffered
material injury thereby. The court may, however, decline to dismiss the appeal,
whereupon it shall give such direction to the cause as it may deem proper.
Id. 74(l)(1).
      More than thirty days have passed since Grant's brief was due. We notified Grant of this
defect by letter on November 2. See id. 60(a)(2), 83. He has not responded to our letter showing
grounds for continuing the appeal nor has he provided a reasonable explanation for failing to file
a brief. Therefore, this appeal is dismissed for want of prosection. See id. 74(l)(1). 
                                                                               PER CURIAM

Before Chief Justice Thomas,
      Justice Cummings, and
      Justice Vance
Dismissed
Opinion delivered and filed November 16, 1994
Do not publish 



nked them for allowing him to see the
children and prepared to leave. However, while standing in the living room, Goehring "looked
down at [his] feet, and there was a plastic bag, like a sandwich bag with a green leafy substance
in it." According to Goehring, the bag was not underneath anything, but was clearly visible
because it was "just laying on the ground." He picked the bag up, opened it, and determined that
it contained marihuana. Fonville and her husband were arrested after Goehring's patrol supervisor
arrived on the scene. When Fonville was handcuffed, the officers discovered that she had a small
plastic baggie containing cocaine in her hand.
      Fonville's version of the facts differs significantly from Goehring's testimony. She agreed
that she was awake when Goehring and Casey knocked on her door early in the morning. She
stated that she partially opened the door and, upon learning of the purpose of the visit, told the
officers to wait a minute. According to Fonville, when she attempted to close the door, Goehring
put his foot in the way and told her that they needed to see the children immediately. Fonville told
the officers, "the hell you do," and closed the door after Goehring withdrew his foot. When she
responded to the officers' second knock by beginning to open the door, Fonville claimed that the
officers entered the apartment without her permission. 
      Fonville admitted that she went into the bedroom, locking the door, for the purpose of
"putting up drug paraphernalia." After she came out, she accompanied Casey into the master
bedroom to check on her youngest child and then went into the other bedroom with Goehring to
check on the other two children. On returning to the living room, Fonville claimed, Goehring
begun to look behind the furniture aided by a flash light. She testified that Goehring discovered
the plastic bag behind a recliner and that the bag only contained marihuana seeds and stems, not
leaf as testified to by Goehring. 
      Officer Casey testified upon being called to the stand by Fonville. Casey stated that Fonville
"open[ed] the door and allow[ed] us to come in" in response to Goehring's second knock on the
door. Casey could not recall if Goehring used his flashlight inside the apartment or where
Goehring found the bag of marihuana. The final testimony at the hearing related to the plastic bag
found in the apartment. Officer Goehring produced the bag when he was recalled to the stand. 
He testified that the bag contained marihuana that had been seized from another location in the
house as well as the marihuana that was originally in the bag; thus, the contents of the bag were
different than when it was seized. The chain-of-custody label on the bag had a space for listing
"Place [where] evidence was found." The handwritten answer stated, "Under coffee table/living
room and under couch in living room." Goehring specifically contradicted the statement on the
label when it was shown to him at the hearing. Finally, although the chain-of-custody label was
purportedly signed by Goehring, he stated that none of the label was in his handwriting. 
      In her first point, Fonville argues that the search was illegal as a matter of federal
constitutional law. She first seeks to establish that the search was undertaken without a warrant,
was not supported by probable cause, and thus was per se constitutionally unreasonable. Next,
she argues that the search cannot be supported by her consent because the State has failed to show
that she knowingly and voluntarily consented to the officers' entry into her home. Fonville then
argues that, even if consent is found, the officers exceeded the scope of her consent by searching
in the living room after the children were viewed and accounted for in their bedrooms. Finally,
she argues that, even if there was consent and the officers did not exceed the scope of that consent
by searching in living room, the State cannot justify the seizure of the baggie because the
"immediately apparent" requirement of the "plain view" doctrine was not satisfied. 
   The first issue that confronts us is whether the complaint is preserved for appellate review. To
preserve a complaint that the court erred by denying her motion to suppress, Fonville must show
that the court, in fact, denied the motion. See Tex. R. App. P. 52(a). The order attached to the
motion is not signed and we cannot find in the statement of facts where the court ruled on the
motion adversely to Fonville. However, Fonville asserts in her brief that the motion was denied,
and the State concedes this fact in its brief. Thus, we will assume that the complaint is properly
preserved. See Tex. R. App. P. 74(f).
      Turning to the merits, then, the State concedes that the search was conducted without a
warrant. However, not all warrantless searches are constitutionally defective. See Texas v.
Brown, 460 U.S. 730, 735-36, 103 S.Ct. 1535, 1540, 75 L.Ed.2d 502 (1983) (reciting exceptions
to the warrant requirement). The state does not need probable cause or a warrant to search when
consent to the search is properly obtained. Boyle v. State, 820 S.W.2d 122, 142 (Tex. Crim. App.
1991) (on rehearing), cert. denied, ___ U.S. ___, 112 S.Ct. 1297, 117 L.Ed.2d 520 (1992). 
Thus, the legality of the officers' entry into the apartment turns on whether the court could find
from the evidence that Fonville consented to the entry.
      The question of consent is a question of fact, determined by the totality of the circumstances. 
Schneckloth v. Bustamonte, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047-48, 36 L.Ed.2d 854 (1973);
Johnson v. State, 803 S.W.2d 272, 286 (Tex. Crim. App. 1990), cert. denied, ___ U.S. ___, 111
S.Ct. 2914, 115 L.Ed.2d 1078 (1991), overruled on other grounds, Heitman v. State, 815 S.W.2d
681, 690 (Tex. Crim. App. 1991). The burden is upon the state to demonstrate by clear and
convincing evidence that the consent was "freely and voluntarily" given. Johnson, 803 S.W.2d
at 286-87. Consent obtained by coercion or by submission to a claim of lawful authority is
ineffective. Id. at 287. Thus, "‛[c]onsent’ that is the product of official intimidation or harassment
is not consent at all." Florida v. Bostick, ___ U.S. ___, 111 S.Ct. 2382, 2388, 115 L.Ed.2d 389
(1991). 
      Fonville does not claim that the trial court applied an erroneous rule of law in determining the
merits of her motion to suppress; thus, her claim is a challenge to the sufficiency of the evidence
to support the trial court's implied finding of consent to the entry. See Brown v. State, 856
S.W.2d 177, 183 (Tex. Crim. App. 1993) (Meyers, J., concurring). As the sole trier of fact on
a motion to suppress evidence, the trial court could believe or disbelieve any or all of any witness'
testimony. See Johnson, 803 S.W.2d at 287. When the record supports the court's finding of
consent, we cannot freely disregard this finding. See id. 
      The court was required to chose between two competing versions of events. In the State's
version, the police officers knocked on the door, merely requested that they be allowed to see the
children, and, upon a second knock on the door, Fonville opened the door all the way, motioning
them inside. In Fonville's version, the officers forced their way into the apartment while she was
opening the door the second time. There is nothing in the record to demonstrate that the officers
were "brandishing weapons," that they were "knocking incessantly" or "continued to bang on" the
door after Fonville closed it. Only two officers were involved, and nothing in the record indicates
they claimed or implied to Fonville that they had the authority to force their way into the
apartment. Fonville recognizes in her brief that Goehring never requested, much less demanded,
that she allow him into the apartment; he merely requested that he be allowed to see her children,
leaving the method of seeing them to her. We cannot say that the court's implied finding of free
and voluntary consent to the entry is not supported by the record. Thus, the court did not err in
concluding that Fonville freely and voluntarily consented to the entry into her apartment by the
officers. See id.
      Fonville next argues that, even if the record will support a finding of consent, the officers
exceeded the scope of the consent when they paused in the living room of the apartment to discuss
their visit with her and her husband. Again, the trial court was required to chose between the
competing versions of events. In Goehring's version, he paused for a minute to a minute and a
half to explain why the officers developed a concern for Fonville's children and to thank the
Fonvilles for their cooperation. Fonville's version was that Goehring began a general exploratory
search of the living room equipped with a flashlight, which he used to peer behind the furniture. 
To deny the motion, the court must have credited Goehring's version and discredited Fonville's
claims. The facts, as related by Goehring, support an implied finding that the officers did not
exceed the scope of Fonville's consent to their entry into the apartment. See Florida v. Jimeno,
___ U.S. ___, 111 S.Ct. 1801, 1803-04, 114 L.Ed.2d 297 (1991). 
      Finally, Fonville argues that the State cannot justify Goehring's seizure of the marihuana
under the "plain view" doctrine. See Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 2304,
110 L.Ed.2d 112 (1990); State v. Haley, 811 S.W.2d 597, 599 (Tex. Crim. App. 1991). The
"plain view" doctrine allows police to seize evidence observed by officers if (1) the officers have
a right to be where they are when they discover the evidence in plain view, and (2) the fact that
the item is evidence or contraband is "immediately apparent" to the police. Id. The "immediately
apparent" element requires the officer to have probable cause to believe that the property is
associated with criminal activity. Haley, 811 S.W.2d at 599. 
      Goehring testified that he found the bag of marihuana lying in the open on the floor when he
stopped to talk with the Fonvilles in the living room, contrary to Fonville's flashlight-fishing-expedition version. Again, we must presume that the court believed Goehring over Fonville, thus
impliedly finding that the marihuana was in plain view. 
      We have upheld the court's conclusions that Fonville consented to the officers' entry into her
apartment and that the officers did not exceed the scope of that consent when they paused in the
living room to talk with her and her husband. Thus, the officers' presence in Fonville's living
room was proper and the first element of the plain view doctrine is satisfied. See id. 
      Although Goehring did not know the bag definitely contained marihuana when he first saw
it, he testified that he believed the substance was contraband based on his training and experience
in dealing with drugs. "[Probable cause] merely requires that the facts available to the officer
would ‛warrant a man of reasonable caution in the belief’ . . . that certain items may be contraband
. . . ; it does not demand any showing that such a belief be correct or more likely true than false." 
Brown, 460 U.S. at 742, 103 S.Ct. at 1543. Goehring's observation of the physical characteristics
of the bag, its contents and condition, combined with his knowledge and personal experience, were
sufficient to establish that he had probable cause to believe he was observing contraband. Thus,
the record supports an implied finding that the second prong is also satisfied, and Goehring's
actions in seizing and searching the plastic bag were justified by the "plain view" exception to the
warrant clause.
      Summarizing, based on the evidence the trial court, as the finder of fact, was entitled to
conclude that: (1) Fonville consented to the officers' entry into the apartment; (2) once inside, the
officers did not exceed the scope of this consent by pausing in the living room to explain the
reason for their actions and to thank the Fonvilles for their cooperation; (3) while in the living
room, Goehring was justified in seizing and searching the plastic bag under the plain view
exception to the warrant requirement; (4) having discovered marihuana in her living room, the
police were authorized to arrest her (see Tex. Health & Safety Code Ann. § 481.121; Tex.
Code. Crim. Proc. Ann. art. 14.01(b) (Vernon 1977)); (5) upon her arrest, any contraband that
she had in her possession or in the immediate vicinity became susceptible to seizure as the result
of a search incident to her lawful arrest (see Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034,
23 L.Ed.2d 685 (1969)).
      Because the police discovered the cocaine during a search incident to the lawful arrest of
Fonville for possession of marihuana discovered in plain view during the officers consensual
presence in her apartment, the trial court did not err by denying her motion to suppress. Point one
is overruled.
      In her second point, Fonville argues that the court erred in denying the motion to suppress as
a matter of Texas constitutional law. However she fails to provide any substantive analysis or
argument to distinguish between the level of protection provided by the state and federal
constitutions. See Heitman v. State, 815 S.W.2d 681, 690-91 n.23 (Tex. Crim. App. 1991). 
Because Fonville does not present any argument or authority that the propriety of the search
should be resolved differently under the Texas Constitution, we need not determine whether the
state constitutional protections are more expansive than that afforded by the federal constitution. 
See id. Point two is overruled.
      In point three, Fonville complains that the trial court overruled her hearsay objections to
Goehring's testimony concerning the anonymous phone call which prompted his visit to her
apartment. See Tex. R. Crim. Evid. 801(d). Goehring testified that the Bryan Police Department
dispatcher told him that a person had called and stated that there might be a problem with
Fonville's children. Fonville's attorney recited the definition of hearsay as his argument in
support of the objection. The State countered with the argument that the statement was not being
offered for the truth of the matter asserted.
      Fonville relies on McVickers v. State, No. 1453-92 (Tex. Crim. App. December 1, 1993),
to establish that hearsay is inadmissible at a hearing on a motion to suppress. However, the
testimony in this case does not involve hearsay. The statements were not offered to show that one
of Fonville's children had fallen from the bed or that her children were neglected. They were
offered instead to explain why Goehring went to the apartment. The truth of these statements have
no bearing on the officers' entry into the apartment, their presence in the living room when they
discovered the marihuana, their right to seize and search the plastic baggie, their right to arrest
Fonville for possession of marihuana, or the discovery of more drugs in her hand when she was
handcuffed. Point three is overruled.
      The judgment is affirmed.

                                                                                 BOB L. THOMAS
                                                                                 Chief Justice


Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed April 6, 1994
Do not publish