COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS



)
 

FERNANDO VISCAINO VALDEZ,
)
 No. 08-02-00215-CR

)


 Appellant,
)
 Appeal from

)
 

v.
)
 112th District Court

)


THE STATE OF TEXAS,
)
 of Pecos County, Texas

)


 Appellee.
)
 (TC# P-2195-112-CR)


O P I N I O N



 Fernando Viscaino Valdez was charged with possession of more than one but less than four
grams of cocaine. The cocaine was seized within 1,000 feet of a school, a "drug-free zone." (1) The
jury found Appellant guilty and set confinement for a term of seven years and assessed a $2,500 fine. 
We affirm.

FACTUAL SUMMARY


 In the early morning hours of April 11, 1999, Officer Irigoyen and Corporal Gonzalez of the 
Fort Stockton Police Department responded to a call reporting a loud noise disturbance in the 1500
block of North Oklahoma Street, in Fort Stockton, Texas. Upon arrival in the area, the officers
located the source as the residence at 1507 North Oklahoma Street. They heard loud music,
observed six or seven cars parked outside the residence, and could hear people talking and yelling
loudly. The officers approached the house from the carport area. They made their way towards the
front of the house to knock on the front door. They were able to see through the front windows
because the blinds were partially open. Both officers could see several individuals whom they knew
to be minors drinking alcohol inside. The officers decided to knock on the door and notify the
individuals inside of the noise complaint and to take action against the minors who were drinking. 
Irigoyen returned to the side door by the carport. (2) Corporal Gonzalez went to knock on the front
door of the house to make contact with the individuals.

 Once Gonzalez knocked on the front door, both officers could hear shuffling and people
running inside the house. An individual opened the side door where Irigoyen was waiting. The
door, which was the carport entrance, consisted of two doors--a solid wooden door and a glass-paneled outer door. Only the inside wooden door was opened. With the inner wooden door open,
Irigoyen was given a full view of the kitchen area. He observed Appellant enter the kitchen, open
a kitchen cabinet, reach for a wash cloth, pull a small plastic bag containing a white powdery
substance from his pocket, cover it up with the wash cloth, put it inside the cabinet and then close
the cabinet door. Although Irigoyen was standing outside the house, he was only about six feet from
Appellant when he attempted to hide the cocaine in the cabinet. Appellant did not see the officer
standing outside the side door. Believing that a felony had been committed in his presence, Officer
Irigoyen opened the glass outer door, entered the house, retrieved the cocaine from the cabinet shelf,
and informed Appellant that he was under arrest for possession of a controlled substance.

MOTION TO SUPPRESS


 In his sole point of error, Appellant contends that the court erred in overruling his motion to
suppress evidence because there was no probable cause to enter the house. A trial court's ruling on
a motion to suppress is generally reviewed for an abuse of discretion. Villarreal v. State, 935
S.W.2d 134, 138 (Tex.Crim.App. 1996); Brewer v. State, 932 S.W.2d 161, 166 (Tex.App.--El Paso
1996, no pet.). Under this standard, an appellate court must defer to a trial court's determination
of historical facts supported by the record, especially when the trial court's fact findings are based
on an evaluation of credibility and demeanor. Guzman v. State, 955 S.W.2d 85, 89 (Tex.Crim.App.
1997). Although great weight should be given to the inferences drawn by trial judges and law
enforcement officers, determinations of reasonable suspicion and probable cause are reviewed
de novo on appeal. Guzman, 955 S.W.2d at 87, citing Ornelas v. United States, 517 U.S. 690, 699,
116 S.Ct. 1657, 134 L . Ed.2d 911 (1996).

 At a suppression hearing, the trial court is the sole judge of the credibility of the witnesses
and of the weight to be given their testimony. Cantu v. State, 817 S.W.2d 74, 77 (Tex.Crim.App. 
1991); Davis v. State, 905 S.W.2d 655, 660 (Tex.App.--Texarkana 1995, pet. ref'd). We do not
engage in our own factual review, but consider only whether the trial court improperly applied the
law to the facts. See Romero v. State, 800 S.W.2d 539, 543 (Tex.Crim.App. 1990); Davis, 905
S.W.2d at 660. Absent an abuse of discretion by the trial court, we will not disturb the trial court's
findings. Cantu, 817 S.W.2d at 77.

 Both the Fourth Amendment and Article I, section 9 of the Texas Constitution guarantee
individuals the right to be free from unreasonable seizures. U.S. CONST. Amend. IV; TEX.
CONST. art. I, § 9; Brewer, 932 S.W.2d at 167. This protection includes a home and the curtilage
of the home. Oliver v. United States, 466 U.S. 170, 180, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984);
Gonzalez v. State, 588 S.W.2d 355, 360 (Tex.Crim.App. 1979). "Curtilage" is the land immediately
surrounding and associated with the home. Gonzalez, 588 S.W.2d at 360. Police have the right to
approach and knock on a defendant's front door. Cornealius v. State, 900 S.W.2d 731, 733-34
(Tex.Crim.App. 1995). Whenever government agents enter into the curtilage, they necessarily
intrude upon the individual's reasonable expectation of privacy. Bower v. State, 769 S.W.2d 887,
897 (Tex.Crim.App. 1989), cert. denied, 492 U.S. 927, 109 S.Ct. 3266, 106 L.Ed.2d 611 (1989),
overruled on other grounds, Heitman v. State, 815 S.W.2d 681 (Tex.Crim.App. 1991). Once an
officer deviates from the usual route for the purpose of knocking on the front door, the officer loses
his status as an invitee. Id. at 897.

Curtilage


 Appellant argues that his driveway and carport fall within the curtilage of his home. Whether
a particular area is included within the curtilage of a home is determined by whether Appellant had
a reasonable expectation of privacy in the area. Bower, 769 S.W.2d at 896. The factors to consider
in determining whether an area is considered curtilage include (1) the proximity of the area to the
home, (2) whether the area is included within an enclosure surrounding the home, (3) the nature of
the use to which the area is put, and (4) the steps taken to protect the area from observation by a
passerby. United States v. Dunn, 480 U.S. 294, 301, 107 S.Ct. 1134, 1139, 94 L.Ed.2d 326 (1987). 
There is no reasonable expectation of privacy if the activity viewed by an officer is visible from the
street, or the curtilage is open to the public. Bower, 769 S.W.2d at 897; Atkins v. State, 882 S.W.2d
910, 912 (Tex.App.--Houston [1st Dist.] 1994, pet. denied).

 Here, the side door was directly accessible and visible from the street. The driveway led to
the side door and was only about thirty feet from the street. Officer Irigoyen did not have to open
or pass through any type of gate or fence to approach the door. There were no cars or other
obstructions hindering the view of the back door from the street. Irigoyen walked up the driveway
and was merely waiting for anyone who may have tried to flee out the door.

 The State contends that when Officer Irigoyen went to the side of the home, it was not to
conduct a search and it was not a place where the residents would reasonably have an expectation
of privacy. Thus, it did not violate the Fourth Amendment. In support of this argument, it cites
Atkins, 882 S.W.2d at 912. There, one police officer approached the back door of a duplex
apartment as a second officer simultaneously approached the front door. Id. at 913. As the first
officer turned the corner to the backyard, he saw the defendant drop a small bag of heroin and run
inside the house. The trial court refused to suppress the heroin. Showing deference to the trial
court's ruling, the appellate court affirmed, noting that no evidence "indicate[d] anything other than
the reasonable inference that the officer was making a joint initial attempt . . . to contact the
inhabitants of the house." Id. at 913.

 We give deference to the trial court's ruling below because the issue involves a mixed
question of law and fact. Absent express orders from a person in possession of property not to
trespass, a police officer is not prevented from approaching the front door of a residence. See
Cornealius, 900 S.W.2d at 733-34. The trial court may have disbelieved that the officers proceeded
to the back of the house solely to contact the homeowner. See State v. Ross, 32 S.W.3d 853, 856
(Tex.Crim.App. 2000)(the trial court may "not know what exactly the facts are, but it does know (on
the basis of demeanor, appearance, and credibility) that they are not as the witness describes"). Id.
at 856; see State v. Guo, 64 S.W.3d 662, 669 (Tex.App.--Houston [1st Dist.], 2001, no pet.).

Probable Cause to Enter the Residence


 Probable cause to search exists when reasonably trustworthy facts and circumstances within
the knowledge of the officer on the scene would lead a person of reasonable prudence to believe
evidence of a crime would be found. McNairy v. State, 835 S.W.2d 101, 106 (Tex.Crim.App. 1991).
If the officer has probable cause to believe evidence or contraband exists in the residence, exigent
circumstances may allow the officer to enter and search immediately and without a warrant to
prevent the destruction of such evidence. McNairy, 835 S.W.2d 107. Items in "plain view" may be
seized by law enforcement personnel if the conditions set forth in Coolidge v. New Hampshire, 403
U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) are met. State v. Haley, 811 S.W.2d 597, 599
(Tex.Crim.App. 1991). These conditions include: (1) the initial intrusion must be proper, in other
words, that the police have a right to be where they are when the discovery is made; and (2) it must
be "immediately apparent" to the police that they have evidence before them (i.e. probable cause to
associate the property with criminal activity). Haley, 811 S.W.2d at 599.

 At the hearing, Officer Irigoyen testified that he did not receive permission to enter the house
and was not invited to do so. He did not attempt to open the door, nor did he intend to alert the
individuals inside of his presence, yet he was able to clearly see into the kitchen once the interior
wooden door was opened by someone in the house. 

 With regard to the first condition, Appellant questions the legitimacy of the officer's
intrusion onto the curtilage. We must thus determine whether the initial intrusion was proper, i.e.,
did the officer have the right to be where he was when the discovery was made. We conclude that
he was. Officer Irigoyen and Corporal Gonzalez saw the individuals inside the house through the
partially open blinds. Gonzalez went to the front door to notify the individuals of the noise
disturbance and to bring attention to the minors that were drinking alcohol. Irigoyen remained at the
side door to prevent anyone from fleeing from the scene. Irigoyen said he was not conducting a
search and was merely assisting his partner. The side door was completely accessible and visible
from the street.

 As for the second condition, the record reflects that based upon all that was within Officer
Irigoyen's view upon waiting at the door, it was indeed "immediately apparent" to him that he had
sufficient evidence before him. He did not enter the house until after he had clearly seen Appellant
run into the kitchen, remove a clear plastic bag from his pocket, and attempt to hide the bag in the
kitchen cabinet.

 Under Article 14.01 of the Texas Code of Criminal Procedure, a peace officer may arrest a
person without a warrant if that person commits an offense in the presence or view of the peace
officer. Tex.Code Crim.Proc.Ann. art. 14.01(b)(Vernon 1977); Stull v. State, 772 S.W.2d 449,
452 (Tex.Crim.App. 1989); Gonzales v. State, 638 S.W.2d 41, 44 (Tex.App.--Houston [1st Dist.]
1982, pet. ref'd). Employing an objective standard in reviewing the officers' conduct, we conclude
they had probable cause to suspect criminal activity and exigent circumstances to enter. Finding no
error in the denial of the motion to suppress, we overrule the sole point of error and affirm the
judgment of conviction.



February 20, 2003 /s/ Ann Crawford McClure 

 ANN CRAWFORD McCLURE, Justice


Before Panel No. 1

Larsen, McClure, and Chew, JJ.


(Do Not Publish)
1. A "drug-free zone" means in or on or within 1,000 feet of premises owned, rented or leased by a school or
institution of higher learning; or within 300 feet of the premises of a public or private youth center, public swimming pool
or video arcade facility. The house was on the corner of the block and approximately 450 feet from the high school. 
2. Both officers said that it is normal procedure to cover all the exits because people tend to run out of the back
door or side door, or whatever exit is available to them.