COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-05-477-CR

 

 

THE STATE OF TEXAS                                                                STATE

 

                                                   V.

 

ROBERT LEAHY POWELL                                                         APPELLEE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------








The State appeals from the
trial court=s grant of
Appellee Robert Leahy Powell=s motion to suppress.  In four
points, the State argues that the trial court erred by granting the motion
because (1) the detective=s affidavit
set forth sufficient circumstances from which the magistrate could find
probable cause to issue the search warrant; (2) the trial court failed to give
great deference to the magistrate=s determination of probable cause; (3) the police officers did not
exceed the scope of the search warrant; and (4) the police officers were not
required to obtain an additional search warrant before opening the two safes
that they seized from the premises to be searched, took with them to the police
station, and opened the following day. 
Because the trial court did not err by 
granting Powell=s motion to
suppress, we affirm the trial court=s suppression order.

Background
Facts

On January 27, 2004, someone
from Hurst TV & Appliance (Hurst TV) reported that a customer had purchased
a big-screen television with a forged check. 
Someone was supposed to pick up the television before the end of that
day.  Hurst Police Officers James Hobbs
and Terry Tabor went to the store to wait for the person to pick it up.  Although a woman called about it, no one came
for the television.  

The next day, North Richland
Hills (NRH) Police Detective Billy Daniels called Hobbs to say that the NRH
police had arrested a woman named Lisa Lowery who had a receipt from Hurst TV
for a big-screen television.  Hobbs went
to the NRH jail and met with Daniels, and the two officers interviewed Lowery
in connection with the forged check she passed at Hurst TV.  In all, Hobbs interviewed her once at the NRH
jail and twice at the Hurst jail and secured three separate statements from
her.  








Lowery denied that she had
stolen or made the checks she had passed and claimed that she had bought the
checks and identification from different locations.  One of the addresses that she gave Hobbs was
6919 Hardisty Street in Richland Hills (the Premises).  Hobbs used the information provided by Lowery
to prepare an affidavit to support the arrest and search warrant signed by
Judge Ken Whiteley, municipal judge for the City of Hurst.  

According to Hobbs=s affidavit in support of the warrant at issue, Lowery had told him
that she had received the check she passed at Hurst TV from Leia McGee and
Powell.  Lowery told Hobbs that Powell
had called and asked her to buy the television for Athem@; in
exchange, Powell and McGee would pay her $200.00.  Lowery told Hobbs that she had gone to the
Premises on January 27, 2004 and that McGee had handed her the check and a
Texas identification card, both in the name of Augustine Terrell.  Hobbs swore that Lowery had told him that
McGee and Powell had stolen the checks from the counter next to a cash register
at Cingular Wireless and that they were making forged checks on a computer in
the back room of the Premises near the garage. 
Lowery also told Hobbs that she saw some counterfeit twenty-dollar bills
there on January 26, 2004.  








Lowery additionally told
Hobbs that she had bought a big-screen television from Sam=s Furniture in Haltom City for Powell and McGee with another forged
check in the name of Augustine Terrell on January 22, 2004.  According to Hobbs, Lowery said that the
television she had bought from Sam=s Furniture was located at the Premises, which she claimed was the
residence of Powell, McGee, and McGee=s grandmother, who was not involved in the criminal activity.  According to Hobbs, Lowery also told him that
she had used another forged check to buy a safe from Home Depot for Powell and
McGee and that the safe was at the Premises. 
Lowery also told Hobbs that on January 27, 2004, she had seen at the
Premises approximately fifty checks in the name of Stanley E. Rush and that
there were guns and drugs at the Premises. 


Hobbs ran a computer check on
Powell and learned that he was in jail, not at the Premises.  Hobbs also Awas able to identify Leia McGee=s grandmother as Roberta Halie McGee, a white female with a date of
birth of August 20, 1920.@  He also confirmed that a white female had
passed a forged check in the name of Augustine Terrell to purchase a Lexmark printer,
mouse, and repair work on a laptop from Express Computer Repair.  Hobbs additionally confirmed through the
Texas and National Crime Information centers (TCIC and NCIC) that Leia Michelle
McGee, a white female with a date of birth of October 2, 1967, had been
arrested for theft and DWI.  








On January 29, 2004, Hobbs
submitted the affidavit described above to the municipal judge to obtain an
arrest warrant for McGee and a search warrant for the Premises.  The affidavit accused McGee of stealing
checks and possessing stolen property purchased with forged checks and listed
the following property as Aconcealed and kept in violation of the laws of Texas@ at the Premises:

$                  
ANumerous
customers= checks
stolen from Cingular Wireless.@

$                  
AChecks and
materials to make forged checks.@ 

$                  
AComputers,
printers and scanners for forging checks.@

$                  
a big-screen television
purchased with a counterfeit check.

$                  
and a printer purchased with
a counterfeit check.  

The affidavit listed neither drugs nor safes as
property to be seized, despite Lowery=s statements that she had bought a safe with a forged check, that the
safe she had bought was at the Premises, and that she had seen drugs at the
Premises.

That same day, the magistrate
issued the warrant to arrest McGee and to seize the specifically designated
property, and Hobbs and other police officers executed the warrant.  








Hobbs was the sole witness testifying at the hearing on Powell=s motion to suppress.  He
testified that when the officers executed the warrant, they took two safes back
to the police station.  The next day, the
police called a locksmith, who drilled into the safes at their request.  Hobbs testified that officers found
methamphetamine in one of the safes.  The
officers did not obtain a second search warrant before seizing or opening the
safes.  

Based on the methamphetamine found in the safe, a grand jury indicted
Powell on two countsCpossession
with intent to deliver methamphetamine of 4 grams or more but less than 200
grams, including any adulterants or dilutants, and possession of
methamphetamine of 4 grams or more but less than 200 grams, including any
adulterants or dilutants.  Powell filed a
motion to suppress the methamphetamine, alleging that (1) there was not
probable cause on the face of the affidavit to support issuance of the search
warrant, and (2) the police exceeded the scope of the search warrant by seizing
the two safes, taking them to the police station, keeping them overnight, and
then having them drilled open the next day. 


After a hearing, the trial court granted Powell=s motion to suppress in its entirety after Ahaving considered the evidence and the credibility of the witnesses.@  The State then timely filed a
notice of appeal.  

Standard of Review








We review a trial court=s ruling on a motion to suppress evidence under a bifurcated standard
of review.[1]  In reviewing the trial court=s decision, we do not engage in our own factual review.[2]  The trial judge is the sole trier of fact and
judge of the credibility of the witnesses and the weight to be given their
testimony.[3]  Therefore, we give almost total deference to
the trial court=s rulings on
(1) questions of historical fact, even if the trial court=s determination of those facts was not based on an evaluation of
credibility and demeanor, and (2) application‑of‑law‑to‑fact
questions that turn on an evaluation of credibility and demeanor.[4]









When the trial court grants a motion to suppress without filing
findings of fact or any other explanation, and the only evidence presented in
the suppression hearing is the search warrant and testimony of the arresting
officerCwhich, if believed, clearly constitutes probable causeCthere is not a Aconcrete@ set of facts that can be implied from such a ruling.[5]  In those cases, there is a mixed question of
law and fact that turns on an evaluation of the credibility and demeanor of the
sole witness whom the trial court obviously chose not to believe.[6]  In such cases, we view the evidence in the
light most favorable to the trial court=s ruling, giving it almost total deference.[7]

The party bringing the motion to suppress bears the burden of
establishing all of the elements of his Fourth Amendment claim, including
establishing his privacy interest in the premises searched.[8]  Once a defendant has established the basis
for a Fourth Amendment claim, however, the burden shifts to the prosecution to
establish the validity of the search under the applicable theory of law.[9]  In this case, the State therefore bears the
burden of proving the trial court erred by granting the motion to suppress.[10]  








When the record is silent on the reasons for the trial court=s ruling, or when there are no explicit fact findings and neither
party timely requested findings and conclusions from the trial court, we imply
the necessary fact findings that would support the trial court=s ruling if the evidence, viewed in the light most favorable to the
trial court=s ruling,
supports those findings.[11]  We then review the trial court=s legal ruling de novo unless the implied fact findings supported by
the record are also dispositive of the legal ruling.[12]  We must uphold the trial court=s ruling if it is supported by the record and correct under any theory
of law applicable to the case even if the trial court gave the wrong reason for
its ruling.[13]  

In the case now before this court, the trial court entered no findings
of fact, but the record is not silent on the reasons for the trial court=s ruling.  The trial court
stated that his ruling was based on the evidence he heard and his determination
of Athe credibility of the witnesses.@  We are not in a position to
secondguess the trial judge=s determination of the credibility of the witnesses but must view the
evidence deferentially in support of the trial court=s ruling.[14]


 

 








Scope of the Warrant  

In its third point, the State contends that the trial court erred by
granting the motion to suppress because the seizure and opening of the two
safes did not exceed the scope of the warrant. The warrant incorporated the
affidavit that Aparticularly
described@ the
property to be seized as:

2.     THERE IS AT SAID SUSPECTED
PLACE AND PREMISES PROPERTY CONCEALED AND KEPT IN VIOLATION OF THE LAWS OF
TEXAS AND DESCRIBED AS FOLLOWS:

 

Numerous
customers=
checks stolen from Cingular Wireless.

 

Checks
and materials to make forged checks.

 

Computers,
printers and scanners for forging checks.

 

Big
Screen JVC 32 inch flat screen Television Serial Number 16837227 JVC TV Stand
model #RKC32DF4AS purchased with a counterfeit check Dated 01-22-04 for $974.15
[f]rom Sam=s
Furniture.

 

Lexmark
Print Trio color jet printer purchased on January 24, 2004 for $99.99 with
counterfeit check #4957 from Express Computer Repair.  

 

A safe is mentioned in the affidavit, not as property to be seized,
but as part of Hobbs=s basis for
probable cause:  ALisa Lowery also told me that Robert Powell and Leia McGee gave her
another check #4961 in the name of Augustine Terrell for $199.14 to go to Home
Depot to purchase a safe for them.  Lisa
Lowery advised that the safe is at [the Premises].@   








Powell points out that there is a recognized distinction between
search and seizure, citing Horton v. California:[15]
AA search compromises the individual interest in privacy; a seizure
deprives the individual of dominion over his or her person or property.@[16]    

The warrant did not specifically permit search or seizure of any safe,
nor did the underlying affidavit list any safe as Aproperty concealed and kept in violation of the laws of Texas.@  The supporting affidavit
referred to a single safe, but it did not indicate what the safe would be used
for, its size, its color, its brand, or anything else that would distinguish
the safe from all other safes.








One of the most basic and fundamental requirements for a warrant is
that it must Aparticularly
describ[e] the place to be searched, and the persons or things to be seized.@[17]  AThe requirement that warrants shall particularly describe the things
to be seized makes general searches under them impossible and prevents the
seizure of one thing under a warrant describing another.@[18]  AAs to what is to be taken, nothing is left to the discretion of the
officer executing the warrant.@[19]

The State argues that Aa search warrant authorizing the search of a defined premises also
authorizes the search of containers found on that premises which reasonably
might conceal items listed in the warrant, regardless of whether separate acts
of entry or opening may be required.@  The State relies on an Eighth
Circuit case, United States v. Johnson,[20]
to support its argument that the police were authorized to seize, remove, and
later open a safe not named in the warrant. 


James Wayne Johnson was indicted on three counts of receiving firearms
previously shipped or transported in interstate commerce while a convicted
felon and on one count of possessing firearms in or affecting commerce while a
convicted felon.[21]
Johnson waived a jury trial, and the district court tried the case on the basis
of stipulated facts.[22]








On appeal, Johnson argued, among other things, that the officers
searching his residence had no authority to remove a floor safe from his
bedroom and later open it at the police station without his consent.[23]  Johnson was present when the officers found
the safe and refused to open it for them at the time of discovery.[24]  That safe contained two of the weapons used
to convict Johnson.[25]


The Eighth Circuit rejected Johnson=s contention, pointing out that A[a] search warrant authorizing the search of defined premises also
authorizes the search of containers found on that premises which reasonably
might conceal items listed in the warrant.@[26]  Because the officers were
authorized to open the safe under the warrant when they discovered it at the
house, the court held that they did not need a second warrant to complete the
search of the safe at the police station later.[27]








Unlike Powell, Johnson stipulated to the evidence before the trial
court, including the location of the floor safe within the premises described
by the warrant.[28]  Johnson complained of the sufficiency of the
evidence, the propriety of taking without his consent a safe that was properly
discovered pursuant to a warrant to the police station before opening it, and
the adequacy of the affidavit supporting the warrant.[29]

Unlike the trial court in the case before us, the Johnson court
ruled that 

Johnson=s
possession of each of the weapons listed in the indictment reasonably could be
inferred from the stipulated facts considered by the district court. In
particular, the California informant would have testified that she saw Dale
Nelson, Johnson=s
nephew, Areturn@ a
weapon similar to that listed in Count I to Johnson during the informant=s
visit at the Johnson residence in February of 1982. During that same visit, she
saw Johnson exercise personal control over the floor safe in which the officers
found the weapons listed in Counts II and III.[30]

 

Unlike the evidence in the Johnson case, nothing in the
evidence in the case before us shows that Powell exercised control over either
safe seized by the police.  No evidence
showed where the safes were found, that the safes were connected to Powell,
that either safe was the safe referred to in the affidavit, or the age or size
of the safes.  Consequently, we cannot
say that the trial court erred by concluding that the seizure and opening of
the safes exceeded the scope of the warrant. 
We overrule the State=s third point.

 








Did an Exception to the Warrant Requirement
Apply?

In its fourth point, the State contends that the trial court erred by
granting Powell=s motion to
suppress because the police were not required to get another warrant before
opening the seized safes.  As we held
above, the original warrant did not justify the seizure.  But law enforcement officers may seize
property that has not been Aparticularly described@ in the warrant if the State can show an exception to the warrant
requirement.[31]  As the Texas Court of Criminal Appeals has
explained,

It
has been very well settled that items in Aplain view@ may
be seized by law enforcement personnel if each of the three conditions set
forth in Coolidge v. New Hampshire are met.  These conditions include:  1) the initial intrusion must be proper, in
other words, that the police have a right to be where they are when the
discovery is made;  2) the discovery of
the evidence must be inadvertent;  and 3)
it must be Aimmediately
apparent@ to
the police that they have evidence before them (i.e. probable cause to
associate the property with criminal activity). 
However, the United States Supreme Court has recently modified the
criteria in that Ainadvertence@ is
no longer a necessary condition of a legitimate Aplain
view@
seizure.[32]

 








Consequently, to fall within the plain view warrant exception, the
State must show that (1) the police officer had legal authority to be in the
place where he viewed the safes and was legally able to access them; (2) the
safes were in plain view; and (3) the incriminating character of the safes was
immediately apparent.[33]

Hobbs testified that Lowery Amentioned the safes and that she believed that some of the checks were
possibly kept in the safe.@  He also testified,

Q.  The two safes that you talk about, Lisa
Lowery talked about those and you included some of the information on those in
the affidavit, didn=t
you?

 

A.  Yes, sir.

 

Q.  And, in fact, the safes that she refers to,
as you put in the affidavit, those were stolen, right?

 

A.  Yes, sir.  








At a hearing on a motion to suppress, Athe trial judge is the exclusive judge of the credibility of the
witnesses and the weight to be given their testimony.  He is authorized to believe or not believe
any or all testimony of witnesses for either the State or the defendant.@[34] If the State had prevailed below, we would presume that the trial
court took Hobbs=s testimony
as true.  But in the case now before this
court, we make no such presumption, especially in light of the fact that the
trial court noted that its ruling was based on the evidence and credibility of
the witnesses.  Because the trial court
announced that the suppression ruling was based on the credibility of the
witnesses, we do not presume that the trial court found the sole witness
credible. 

As Powell reminds us, although the State repeatedly used the plural, Asafes,@ in
questioning Hobbs, only a single safe is mentioned in his affidavit.  Thus, Hobbs=s testimony about two safes directly conflicted with his
affidavit.  When, therefore, Hobbs
testified that Lowery had told him that she believed that some of the checks
were possibly kept in the safe, it is entirely plausible that the trial court
found this testimony not credible, especially in light of the fact that it
appears nowhere in the affidavit.  

 Perhaps the trial court did not
believe that Lowery had spoken of two safes, especially because Hobbs mentioned
only one safe in his affidavit.  Perhaps
the trial court did not believe that Lowery had said that Asome of the checks were possibly kept in the safe,@ especially because Hobbs did not mention this important information
in his affidavit.  Perhaps the trial
court did not believe Hobbs=s additional testimony that, in his experience, people who are making
forged checks have safes, especially because the officer did not mention this
information in his affidavit and did not list a safe as property that he sought
to seize.








 

Although Hobbs testified that he seized the safes when he executed the
warrant, he did not testify that they were in a place that the warrant
authorized him to search.  Perhaps the
trial court was not convinced that the State had sustained its burden to prove
by a preponderance of the evidence that the officers were lawfully in the place
where they actually found the safes.  
Hobbs did not testify where or under what circumstances he found the
safes.  We do not know how large, how
old, or what brand the safes were.  We,
therefore, cannot know that the trial court believed that it was immediately
apparent that either of the safes was the one that Lowery had claimed to have
purchased and was, therefore, considered stolen.  It is possible that at least one of the safes
was the right size to hold checks because Hobbs testified that the police found
checks in one, but because of the trial court=s ruling, we cannot know whether the trial court believed that the
police did find checks there.  








Consequently, based on the standard of review that we must follow, we
hold that the trial court could have properly found that the State did not
prove that the Aplain view@ exception applied.  As a
result, the seizure and later search of the safes were illegal; a new warrant
would have been necessary to justify them. 
The trial court therefore did not err by suppressing the evidence on
this ground.  We overrule the State=s fourth point and do not reach its first two points.[35]

Conclusion

Having overruled the State=s third and fourth points without reaching its first two points, we
affirm the trial court=s order
suppressing the evidence.  

 

LEE
ANN DAUPHINOT

JUSTICE

 

PANEL A:   CAYCE, C.J.; DAUPHINOT
and WALKER, JJ.

PUBLISH

DELIVERED: June 5, 2008











[1]Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim.
App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).





[2]Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim.
App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.CFort Worth 2003, no pet.).





[3]State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim.
App. 2000); State v. Ballard, 987 S.W.2d 889, 891 (Tex. Crim. App.
1999).





[4]Montanez v. State, 195 S.W.3d 101, 108B09 (Tex. Crim. App. 2006); Johnson
v. State, 68 S.W.3d 644, 652B53 (Tex. Crim. App. 2002); State v. Ballman, 157
S.W.3d 65, 68 (Tex. App.CFort Worth 2004, pet. ref=d). 





[5]Ross, 32 S.W.3d at 856.





[6]Id. at 856B58; Guzman, 955 S.W.2d at
89.





[7]Estrada v. State, 154 S.W.3d 604, 607 (Tex. Crim.
App. 2005); Guzman, 955 S.W.2d at 89; see also Ross, 32 S.W.3d at
856.





[8]See State v. Mercado, 972 S.W.2d 75, 78 (Tex. Crim.
App. 1998).





[9]See id.





[10]See id. at 77.





[11]State
v. Kelly, 204 S.W.3d 808, 818B19 (Tex. Crim. App. 2006).





[12]Id. at 819.





[13]Armendariz v. State, 123 S.W.3d 401, 404 (Tex. Crim.
App. 2003), cert. denied, 541 U.S. 974 (2004); Ross, 32 S.W.3d at
855B56; Romero, 800 S.W.2d at
543.





[14]See Estrada, 154 S.W.3d at 607; Guzman,
955 S.W.2d at 89; see also Ross, 32 S.W.3d at 856.





[15]496 U.S. 128, 110 S. Ct. 2301
(1990).





[16]Id. at 133, 110 S. Ct. at 2306.





[17]U.S. Const. amend. IV.





[18]Marron v. United States, 275 U.S. 192, 196, 48 S. Ct. 74,
76 (1927).





[19]Id.





[20]709 F.2d 515 (8th Cir. 1983) (per
curiam).





[21]Id. at 516.





[22]Id.





[23]Id.





[24]Id.





[25]Id.





[26]Id.





[27]Id.





[28]Id.





[29]Id.





[30]Id. at 516B17.





[31]Marron, 275 U.S. at 196, 48 S. Ct. at 76;
see also Horton, 496 U.S. at 139B40, 110 S. Ct. at 2309.





[32]State v. Haley, 811 S.W.2d 597, 599 (Tex. Crim.
App 1991) (citations omitted).





[33]See Horton, 496 U.S. at 136B37, 110 S. Ct. at 2308. 





[34]Dalgleish v. State, 787 S.W.2d 531, 534 (Tex. App.CBeaumont 1990, pet. ref=d) (citing Mattias v. State,
731 S.W.2d 936, 939 (Tex. Crim. App. 1987)).





[35]See Tex. R.
App. P. 47.1.